[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/03/99
THOMAS  K. KAHN
CLERK

_____

No. 98-6061

_____

NLRB No. 10-CA-29281


JIM WALTER RESOURCES, INC.,

                                                                    Petitioner,
                                                                    Cross-Respondent,


                                        versus


THE NATIONAL LABOR RELATIONS BOARD,
TIM BURCHFIELD,

                                                                    Respondents,
                                                                    Cross-Petitioners.


_____

Petition for Review and Cross Application for
Enforcement of an Order of the National Labor Relations Board
_____

**(June 3, 1999)**

Before TJOFLAT, Circuit Judge, GODBOLD and HILL, Senior Circuit Judges.


PER CURIAM:

        This is a refusal to hire case in which the Board, reversing the ALJ, found

that Jim Walter Resources, Inc. refused to hire Tim Burchfield because of his

union or protected activities in violation of Section 8(a)(1) and (3) of the National

Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (a)(3). We reverse the order of the Board and deny the application of the Board for enforcement.

Burchfield was previously employed by Cowin and Co., a mining operator. There he was a member of the United Mine Workers and engaged in union activities for the United Mine Workers, including services as a grievance committeeman. In handling grievances he dealt with and met with a Cowin management official, Richard Cates.

Subsequently Cates left Cowin and was employed by Walter as a supervisor. Burchfield applied to Walter for employment and listed Cates as a reference. Walter had a long-standing relationship with UMW.

Walter's personnel manager, Roger Armbrester, contacted Cates about Burchfield. Cates told him that Burchfield was a "pretty good worker and had a good attendance record." Burchfield had a job interview with Walter's industrial relations supervisor. He was introduced to the mine manager, who told a personnel representative that he looked forward to having Burchfield come to work. The Personnel Department was notified to process his application. Burchfield's application was supported by supervisory personnel of Walter. Also, according to the Personnel Department, the company received more calls recommending Burchfield's hire than with any prior applicant.

2

As part of the final processing of Burchfield's application Mike Hall, industrial relations manager, began contacting persons who had worked for Cowin during Burchfield's employment there. He talked with Ladew Hall, who said he was glad he did not have to supervise Burchfield because he "ran his mouth a lot." Employee Simon Comer told Mike Hall that Burchfield "did not have a good attitude." In view of these negative responses Armbrester interviewed Cates a second time. Cates said that Burchfield was a "pretty good worker and his attendance record was good. . . . He talked his mouth a lot and ran his mouth a lot." Asked what this meant Cates explained that Burchfield "complained a lot," "griped a lot about everything," "had generally a bad attitude" and "blamed the company for everything."

There is no evidence of record that comments by Ladew Hall and Comer were related in any way to union activity by Burchfield. Nor is there evidence that Armbrester discussed with Cates Burchfield's union activity at Cowin. The ALJ found that the record "fail[ed] to establish that the poor recommendations stemmed from Tim Burchfield engaging in protected concerted activities."

Mike Hall recommended to mine manager Cooley that Burchfield not be hired "because of his attitude." Cooley testified that he had no knowledge of Burchfield's alleged union activities. He made the decision not to hire Burchfield

3

only after he was told of his "attitude problem" and that he would not fit in at the mine.

There was evidence of a "bad attitude" by Burchfield in matters independent of union activities. He had a personal dispute with Cowin about insurance, in which he was represented by his own attorney. He had a difference with Cowin over the fact that he was delivered the wrong lunch when working overtime and, in a fit of pique, left the job. The company withdrew discipline assessed against Burchfield and issued him an apology.

The Board held that Walter's hiring officials did not know about the specific nature of Burchfield's activities at Cowin but nevertheless relied on Cates' negative second recommendation in making the decision not to hire him. This knowledge by Cates, a supervisor, regarding Burchfield's employment at Cowin, and Cates' description that he had a "bad attitude," were imputed to Walter officials who made the decision not to hire him. Then, in a second step, though there was no evidence that Burchfield's union activities were ever made known to hiring officials at Walter, the Board inferred that Cates' description of "bad attitude" necessarily referred to Burchfield's activities on behalf of the union.

The Board's findings fail at several levels. There is not substantial evidence that Burchfield's "bad attitude" statements were substantially motivated, indeed

4

motivated at all, by an adverse view maintained by Cates of Burchfield's prior union activities at Cowin. Union activities were never mentioned by Cates. There is not substantial evidence that the company's decision not to hire Burchfield was based upon Cates' negative second reference to Burchfield. Cates was only one of several employees who described Burchfield as having a "bad attitude." Having heard the "bad attitude" characterizations Personnel Department employees recommended to manager Cooley that, because of those characterizations Burchfield not be hired, and Cooley accepted that recommendation. There is no substantial evidence for the Board's conclusion that the company's decision not to hire Burchfield was based upon Cates' negative second reference to Burchfield. Indisputably the decision was based upon information drawn from interviews and discussions with several employees. The Board's finding that Cates played a "decisive role" in the decision not to hire Burchfield is wholly unsupported. There is not substantial evidence that the "bad attitude" statements were substantially motivated by an adverse view maintained by Cates of Burchfield's prior union activities at Cowin. Union activities were not mentioned in Cates' conversations.

None of the persons who gave "bad attitude" statements was an "agent responsible for hiring." The only one shown to have knowledge of Burchfield's union activities was Cates, who had no connection with hiring. In a refusal to hire

5

case the Board may not impute the knowledge of a low-level supervisor to a decision-making supervisor.  Pioneer Natural Gas Co. v. NLRB, 662 F.2d 408, 412 (5th Cir. Unit A 1981).  In a refusal to hire case it must be shown that the official who made the decision has knowledge of the protected activity.  Guaranty Sav. & Loan v. Gardiner, 274 NLRB 676 (1985).

The Board attempts to carry its burden of proving a connection between the "bad attitude" problems and union activities by the fact that the company did not call Cates as a witness.  That proposition assumes that Cates would have described his characterizations as relating to union activities and that his characterizations played a "decisive role" in the decision not to hire Burchfield.  Neither assumption is justified.

The order of the Board is REVERSED and enforcement is DENIED.